**Constance S. KEISER, Plaintiff,**

v.

**CDC INVESTMENT MANAGEMENT CORP, et al., Defendants.**

**No. 99 Civ. 12101(WHP).**

United States District Court, S.D. New York.

March 30, 2001.

James D. Esseks, Kevin T. Mintzer, Vladeck, Waldman, Elias & Engelhard, P.C., New York City, for Plaintiff.

Howard J. Rubin, Daniel A. Feinstein, Davis & Gilbert, LLP, New York City, for Defendant CDC.

Patrick W. Begos, Begos & Horgan, LLP, Bronxville, NY, for Defendant First UNUM.

## MEMORANDUM AND ORDER

PAULEY, District Judge.

This is an action pursuant to the Employment Retirement Income Security Act of 1974, 29 U.S.C. 29 § 1001 *et seq.* ("ERISA") and New York law. Plaintiff Constance S. Keiser ("Keiser") alleges that her former employer CDC Investment Management Corp., together with CDC Capital Incorporated Long Term Disability Income Plan, CDC Capital Incorporated Life Insurance Plan, (collectively "CDC"), and CDC's insurer First UNUM Life Insurance Company ("First UNUM") breached agreements to provide long-term disability and life insurance benefits. Pending before this Court are four motions for summary judgment: CDC and First UNUM move for summary judgment against plaintiff on all her claims, First UNUM moves for summary judgment against CDC's claim for contribution, and third-party defendant James Harman ("Harman") moves for summary judgment against CDC's claim for subrogation. For the reasons set forth below, CDC's motion for summary judgment against Keiser is denied, First UNUM's motions for summary judgment against Keiser and CDC are denied, Harman's motion for summary judgment against CDC is granted, and Keiser's third cause of action for breach of contract is dismissed.

## BACKGROUND

For the purposes of these motions, the following facts are not disputed. Keiser began working as a Senior Vice President of Sales and Marketing for CDC on June 10, 1992. (CDC's 56.1 Stmt. ¶ 1.) As part of her benefits package, Keiser received coverage under CDC's Group Long Term

Disability Insurance Policy ("UNUM Policy") issued by First UNUM. (CDC's 56.1 Stmt. ¶ 3.) In part, the UNUM Policy provides:

> An employee will cease to be insured on ... the day employment terminates. Cessation of active employment will be deemed termination of employment, except ... the employer may continue the employee's insurance by paying the required premiums, subject to ... the time shown in the policy specifications for an employee given a leave of absence.

(Feinstein Decl. Ex E: First UNUM Plan ¶ V.A.5.b.)

In March 1996, Keiser and CDC agreed to terminate their relationship. (CDC's 56.1 Stmt. ¶ 5.) On March 27, 1996, Keiser and CDC executed an agreement (the "Resignation Agreement") which provided in part:

> [Keiser's] resignation will be effective as of ... June 30, 1996 (the Resignation Date). It is agreed that following the Resignation Date, [Keiser] will be entitled to remain on the CDC active payroll, as if [she was] a full-time active employee, for a three-month severance period [the "Severance Period"] through September 30, 1996.... However, except as specifically set forth in this Agreement, you will not be required and shall not perform the duties of your employment with CDC or hold yourself out to others as an employee of CDC on or after March 31, 1996.

(CDC's 56.1 Stmt. ¶ 6; Declaration of Daniel Feinstein ("Feinstein Decl.") Ex. A: Resignation Agreement at 1.) The Resignation Agreement also provided that Keiser's benefits were to remain in effect until the earlier of the expiration of the Severance Period or the date she commenced other employment. (First UNUM's 56.1 Stmt. Ex. A: Resignation Agreement at 1.)

The parties dispute whether Keiser was a CDC employee from April 1, 1996 through June 30, 1996, (the "Resignation Period"), but agree that CDC paid for Keiser to attend two conferences in April and May 1996. (*See* Declaration of Constance S. Keiser ("Keiser Decl.") ¶¶ 20, 27, 28, Ex. D.) Throughout the Severance Period, Keiser remained on CDC's payroll with CDC withholding taxes and contributions and paying premiums on the UNUM Policy. (CDC's 56.1 Stmt. ¶ 8.)

On August 30, 1996, Keiser's car was rear-ended by a truck driven by Harman. (CDC's 56.1 Stmt. ¶ 10.) As a result of the collision, Keiser suffered cervical, shoulder and spinal injuries resulting in a loss of concentration, blurry vision, muscle spasms, and chronic neck and back pain. Keiser's injuries prevented her from working from August 31 to October 13, 1996. (First UNUM's 56.1 Stmt.) On October 14, 1996, Keiser began employment with Jackson National Life Insurance Companies ("Jackson"). However, her injuries limited her performance of the majority of her duties. (First UNUM's 56.1 Stmt.) Keiser worked on 26 separate days in the period from October 14, 1996 through December 23, 1996. (First UNUM's 56.1 Stmt.)

Keiser continued to work part-time for Jackson until June 1997. (Keiser's 56.1 Stmt. ¶ 10.) After returning home from a business trip in great pain on June 10, 1997, Keiser resigned. The Social Security Administration later determined that from June 3, 1997, Keiser was completely disabled and unable to perform any job suitable to her training, education, or experience. Keiser requested from CDC a copy of a benefits application for the UNUM Policy at some point during the summer of 1997 and applied for benefits on September 4, 1997. (CDC's 56.1 Stmt. ¶¶ 11, 12.) First UNUM denied Keiser's claim in part on the ground that she was

not an active CDC employee at the time of her accident. (CDC's 56.1 Stmt. Ex. B: Claim Rejection Letter at 1.) First UNUM denied Keiser's appeal on January 19, 1998 finding again that she was not an active employee under the UNUM Policy. (CDC's 56.1 Stmt. Ex. C: Appeal Letter; Ex. D: Appeal Rejection.) On December 16, 1999, Keiser brought this action against CDC and First UNUM.

## DISCUSSION

### I. *Summary Judgment Standard*

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The burden of demonstrating the absence of any genuine dispute as to a material fact rests with the moving party. *See, e.g., Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Grady v. Affiliated Cent., Inc.,* 130 F.3d 553, 559 (2d Cir.1997). In evaluating the record to determine whether there is a genuine issue as to any material fact, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513.

If the moving party meets its initial burden, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). The non-moving party must "do more than simply show there is

some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The applicable substantive law determines which facts are critical and which facts are irrelevant. *See Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510.

### II. *Keiser's Breach of Contract Claim*

Keiser claims that CDC "breached the provision of the Resignation Agreement that promised to continue LTD coverage through September 30, 1996." (Compl.¶ 46.) At oral argument, this Court broached the issue of whether ERISA preempted Keiser's breach of contract claim. (Tr. at 18.) Thereafter, Keiser and CDC submitted letter memoranda briefing the issue. (*See* Letter of Daniel A. Feinstein, Esq., dated Oct. 27, 2000; Letter of James D. Esseks, Esq. dated Oct. 27, 2000).

■ ERISA provides that it shall, with certain exceptions, "supersede any and all State laws insofar as they may now or hereafter relate to any [ERISA] employee benefit plan." 29 U.S.C. § 1144(a). "This expansive preemptive provision is to be broadly employed, as Congress intended for exclusively federal regulation of benefit plans." *Devlin v. Transp. Communications Int'l Union,* 173 F.3d 94, 98 (2d Cir.1999) (citing *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990)); *see also Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 11, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987) (Congress intended ERISA to avert a "patchwork scheme of state regulation" which would cause "considerable inefficiencies in benefit program operation."). Courts have typically found that ERISA preempts any state law claims that in any way relate to the employee benefit plan.

*Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 2896, 77 L.Ed.2d 490 (1983); *see also Devlin,* 173 F.3d at 98. Application of the ERISA preemption is determined by a two-part inquiry: (1) whether the contract claim asserted "relates to" an employee benefit plan within the meaning of 29 U.S.C. § 1144(a) and, if so, (2) whether there is an exception under ERISA that precludes preemption of the state law. *Shaw,* 463 U.S. at 93–94, 103 S.Ct. at 2898.

■ A state law "relates to" an employee benefit plan if it "has a connection with or reference to such plan," regardless of the state law's underlying intent. *Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct. at 483; *Shaw,* 463 U.S. at 96–97, 103 S.Ct. at 2900. "Under this 'broad common-sense meaning,' a state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans or the effect is only indirect." *Ingersoll–Rand,* 498 U.S. at 139, 111 S.Ct. at 483 (quoting *Pilot Life,* 481 U.S. at 47, 107 S.Ct. at 1553). Thus, a state law that only indirectly affects a pension plan may nevertheless "relate to" that plan for preemption purposes. *Shaw,* 463 U.S. at 97, 103 S.Ct. at 2900.

■ Keiser pursues this breach of contract action under New York law as an alleged ERISA plan participant, explicitly referencing the plan in her complaint and dealing exclusively with remedies based on the plan's benefits. Undoubtedly, her claims relate to the plan for preemption purposes. *See Smith v. Dunham–Bush, Inc.,* 959 F.2d 6, 10 (2d Cir.1992) (preempting state law claim based on an oral promise to supplement ERISA plan benefits); *Yoran v. Bronx–Lebanon Hosp. Ctr.,* No. 96 Civ. 2179(PKL), 1999 WL 378350, at *5 (S.D.N.Y. June 10, 1999) (ERISA preempted breach of contract claim based on supervisor's promise to pay plaintiff benefits

while he was on terminal leave); *see also Valentine v. Carlisle Leasing Int'l Co.,* No. 97 Civ. 1406(RSP), 1998 WL 690877, at *4 (N.D.N.Y. Sept. 30, 1998) ("Where a state law claim would determine whether any benefits are paid pursuant to an employee benefits plan ..., ERISA preempts those claims."); *Johnson v. Antioch Univ.,* No. 91 Civ. 0133, 1992 WL 88028, at *4 (D.D.C. Apr. 15, 1992) (breach of employment contract claim that relied on the fact that "[e]mployee benefit packages are part of the contract between employee and employer" was preempted by ERISA). Moreover, Keiser's claim does not fall into any narrow exception to preemption under ERISA. *See* 29 U.S.C. § 1144(b)(1)-(6) (excepting from preemption, *inter alia,* state regulations pertaining to insurance, banking and securities); *see also Smith,* 959 F.2d at 10. Accordingly, this Court dismisses Keiser's breach of contract claim.

### III. *Promissory Estoppel*

■ CDC never mentions Keiser's promissory estoppel claim in its motion papers, but states that "New York law requires dismissal of [Keiser]'s claim" because she failed to file a notice of claim and a notice of proof in accord with the UNUM Policy. (CDC'S Mem. of Law in Supp. of its Mot. for Summ. J. at 3–4.) The elements of federal promissory estoppel for ERISA claims are " '(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced.' " *Aramony v. United Way Replacement Benefit Plan,* 191 F.3d 140, 151. (2d Cir.1999) (quoting *Schonholz v. Long Island Jewish Med. Ctr.,* 87 F.3d 72, 79 (2d Cir.1996)).

■ Keiser's estoppel claim asserts that she detrimentally relied on CDC's representation in the Resignation Agreement that her coverage would continue until

September 30, 1996. First UNUM rejected Keiser's claim solely on its finding that Keiser was not covered at the time of her accident. CDC's only defense to Keiser's state law claims is that she failed to comply with the UNUM Policy's conditions precedent of filing a notice of proof' and a notice of claim. However, those conditions precedent are terms of the UNUM Policy, and do not apply to the Resignation Agreement. Thus, the notice conditions do not bar Keiser's claim based on promises made in the Resignation Agreement. Accordingly, CDC's motion for summary judgment with respect to Keiser's promissory estoppel claim is denied.

## IV. *Failure to Pay Under the UNUM Policy*

### A. *Scope of Review*

 The parties agree that this Court should review *de novo* First UNUM's denial of Keiser's benefits, but First UNUM argues that the review should be limited to the administrative record. (First UNUM.'s Br. in Supp. of Mot. for Summ. J. ("First UNUM's Mem. in Supp.") at 7.) Although a district court's *de novo* review of an ERISA plan determination is generally limited to the administrative record, a district court may consider additional evidence for good cause. *DeFelice v. Am. Int'l Life Assurance Co.*, 112 F.3d 61, 67 (2d Cir.1997). A "demonstrated conflict of interest in the administrative reviewing body is an example of 'good cause' warranting the introduction of additional evidence." *DeFelice*, 112 F.3d at 66. Keiser argues that good cause exists here because the decision to deny her benefits was made by a First UNUM employee. (Pl.' Mem. in Opp. at 7.) First UNUM responds that Keiser's claim was not evaluated by a First UNUM employee, but by a Quality Review officer of the UNUM Life Insurance Company of America, a different although admittedly related company. (First UNUM's Reply Br. at 5.) This Court finds no merit in First UNUM's argument.

A common interest between the administrator determining eligibility and the source of payment provides a sufficient conflict for a finding of good cause. *See Locher v. Unum Life Ins. Co.*, 126 F.Supp.2d 769, 773 (S.D.N.Y.2001) ("[T]here is a structural conflict where a claims administrator is also the claims payor, and that such a conflict constitutes 'good cause' for the consideration of evidence in addition to that introduced in the administrative proceeding."); *see also Janas v. Cont'l Cas. Co.*, No. 96 Civ. 1901(FJS), 1999 WL 31006, at *4 n. 1 (N.D.N.Y. Jan. 15, 1999) (citing *DeFelice*, 112 F.3d at 66) (plan administrator operated under a conflict of interest where benefits would be paid directly by the plan administrator); *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 378 (3d Cir.2000) (conflict of interest exists where profits and monies paid originate from the same source).

First UNUM argues further that even if a conflict of interest existed, the Court should only admit evidence that was unavailable to Keiser at the time of the administrative review. (First UNUM's Reply Br. at 5.) Magistrate Judge Katz considered this same issue in *Parker v. Reliance Standard Life Ins. Co.*, No. 99 Civ. 1822(RMB)(THK), 2000 WL 97362, at *3 (S.D.N.Y. Jan. 27, 2000). In *Parker*, defendant moved *in limine* to bar plaintiff's additions to the administrative record on the ground that plaintiff had "more than an adequate opportunity ... to supplement the administrative record." *Parker*, 2000 WL 97362, at *3. As Judge Katz explained:

> Defendant's argument ... misses the point of the holding in *DeFelice*. Because the decision-maker's conflict of in-

terest is per se "good cause" under *De-Felice* for allowing the Court to consider evidence that was not before the Plan administrator, the Court need not condition plaintiff's submission of additional evidence on such factors as her inability to fully develop the administrative record. Indeed, the *DeFelice* court was explicit in distinguishing the case of a conflicted administrator from other types of cases where "good cause" was found, such as those with an inadequate administrative record. *Parker*, 2000 WL 97362, at \*3; *see also Janas*, 1999 WL 31006, at \*4 n. 1; *MacMillan v. Provident Mut. Life Ins. Co.*, 32 F.Supp.2d 600, 615 (W.D.N.Y.1999). Accordingly, this Court finds that good cause exists for Keiser to supplement the administrative record.

## B. *Keiser's Wrongful Withholding of Benefits Claim*

First UNUM contends that Keiser was not eligible for benefits at the time of her accident because her employment with CDC had terminated under the Resignation Agreement. Specifically, First UNUM asserts that Keiser was not covered as an "active employee" under the UNUM policy after March 31, 1996 because her employment terminated once she was prohibited from "performing any duties and holding herself out as a CDC employee" after the Resignation Agreement. (First UNUM's Mem. in Supp. at 10.) First UNUM further argues that even if Keiser was a CDC employee after March 31, 1996, her employment ceased on the June 30, 1996 resignation date. (Tr. at 15.) Keiser responds that her continued work for CDC after March 31, 1996 satisfied the UNUM Policy's criteria for "active employment." (Pl's. Mem. in Opp. at 9.) Keiser also argues that the June 30, 1996 resignation date marked her "cessation of active employment" and that "[a] reason-

able fact-finder could conclude that she was on a terminal leave of absence [during the Severance Period] from July 1 through September 30." (Pl.'s Mem. in Opp. at 17.) Thus, whether Keiser was eligible for benefits on the day of her accident depends on whether the Resignation Agreement terminated her employment with CDC on March 31, 1996 or June 30, 1996.

A court may only grant summary judgment in a contract dispute where the language of the contract is wholly unambiguous. *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir.1996); *Mycak v. Honeywell, Inc.*, 953 F.2d 798, 802 (2d Cir.1992); *see also Norfolk S. Ry. Co. v. Flexi-Van Leasing, Inc.*, 99 Civ. 0055(WHP), 2000 WL 1855112, at \*5 (S.D.N.Y. Dec. 18, 2000); *Lehman Bros., Inc. v. Canadian Imperial Bank of Commerce*, 97 Civ. 8226(WHP), 2000 WL 1425098, at \*14 (S.D.N.Y. Sept. 27, 2000). The preliminary question of whether a contract is clear or ambiguous is to be decided by the court as a matter of law. *See Alexander & Alexander Servs., Inc. v. These Certain Underwriters At Lloyd's, London*, 136 F.3d 82, 86 (2d Cir.1998); *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d Cir.1993); *Lehman Bros.*, 2000 WL 1425098, at \*14.

Contract language is unambiguous if it has a "definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion." *Nowak*, 81 F.3d at 1192 (quoting *Breed v. Insurance Co. of N. Am.*, 46 N.Y.2d 351, 355, 413 N.Y.S.2d 352, 355, 385 N.E.2d 1280 (1978)); *Lehman Bros.*, 2000 WL 1425098, at \*15. Language "is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context

of the entire integrated agreement...." *O'Neil v. Retirement Plan for Salaried Employees of RKO Gen., Inc.*, 37 F.3d 55, 59 (2d Cir.1994) (internal citation omitted); *see also Seiden*, 959 F.2d at 428. "The mere assertion of an ambiguity does not suffice to make an issue of fact." *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990); *see also Norfolk*, 2000 WL 1855112, at *6 (contractual language does not become ambiguous simply because the parties to the litigation ague different interpretations). Terms of an ERISA plan like the UNUM Policy will also be interpreted in accord with the "general principles of contract law, looking to the language of the plan and other indicia of the intent of the plan's creator." *Austin v. Ford*, No. 95 Civ. 3730(RWS), 1998 WL 88744, at *3 (S.D.N.Y. March 2, 1998) (internal citation omitted); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 112–13, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Aramony*, 191 F.3d at 149; *Devlin*, 173 F.3d at 103; *I.V. Servs. of Am., Inc. v. Trustees of the Am. Consulting Engs. Council Ins. Trust Fund*, 136 F.3d 114, 119 (2d Cir. 1998). When an ERISA plan's language is ambiguous, this Court may interpret the ambiguity against the drafting party. *See I.V. Servs. of Am.*, 136 F.3d at 121 (the rule of contra proferentem applies to ERISA plans).

█ This Court finds that a question of fact exists as to whether Keiser was actively employed by CDC during the Resignation Period. The UNUM Policy defined "active employment" as working full-time for CDC for regular earnings, for at least 30 hours per week, at either the employer's usual place of business or at a location where CDC required the employee to travel. (First UNUM 56.1 Stmt ¶ 7–8, Ex C: UNUM Policy §§ I.5, II.) The parties do not dispute that Keiser continued to receive her regular salary and commissions during the Resignation Period. Keiser's calendar of activities on CDC's behalf during the Resignation Period demonstrates that she averaged a 38.94–hour work week. (*See* Keiser Decl. ¶¶ 30–33; Ex. C: Desk Calendar for March, April, May, June 1996.) During this period, she either traveled at CDC's request or worked from an office provided by CDC. (*See* Keiser Decl. ¶ 20.) Whether these locales constituted a usual place of business for a CDC employee in Keiser's role is a question for the trier of fact. Moreover, CDC's reimbursement for conferences that Keiser attended in April and May supports her claim that her employment was ongoing. CDC Senior Vice President Seth Wohlberg asserts that requiring Keiser not to perform the duties of her employment or hold herself out to others as a CDC representative meant that Keiser was not to bind CDC contractually during the Resignation Period. (*See* Seth Wohlberg Decl. ("Wohlberg Decl."), dated Sept. 7, 2000, ¶¶ 5–6.) According to Wohlberg, CDC still employed Keiser to work in a public relations capacity during the Resignation Period. (Wohlberg Decl. ¶ 7.) This Court finds that a reasonable fact-finder could interpret the Resignation Agreement's provision precluding Keiser from "performing any duties and holding herself out as a CDC employee" as altering her employment rather than ending it. Accordingly, First UNUM's motion for summary judgment on the ground that Keiser was not engaged in "active employment" during the Resignation Period is denied.

This Court further finds that Keiser's interpretation of "resignation" sufficiently plausible to raise a question for the trier of fact. During the Severance Period, Keiser was on CDC's active payroll "as if [she was] a full-time active employee ... [and] continue[d] to be eligible to receive commissions with respect to ... business originating from [her] intermediaries and

direct clients." (Feinstein Decl. Ex A: Resignation Agreement.) The Resignation Agreement further provided that Keiser's benefits would also remain intact. (Feinstein Decl. Ex A: Resignation Agreement.) In addition, both parties to the Resignation Agreement concur with Keiser's interpretation. (*See* CDC Defs.' Mem. of Law in Opp. to First UNUM's Mot. for Summ. J. at 9.)

First UNUM further argues that the terms "leave of absence" and "severance period," are so "fundamentally different" that equating the two would impermissibly rewrite the UNUM Policy. (First UNUM's Mem. in Support 13.) At no point does the UNUM Policy define "leave of absence" or "severance period," or preclude a leave of absence from being exercised as a terminal leave. First UNUM cites no authority for the principle that a resignation necessarily precludes a subsequent terminal leave of absence. *See, e.g., Woodson v. Manhattan Life Ins. Co. of New York*, 743 S.W.2d 835, 837 (Ky.1987) (employee forced to resign on February 8 could remain as an employee on a "terminal leave of absence" for six months while his salary was paid). When CDC and Keiser entered into the Resignation Agreement, a jury could find that CDC considered that Keiser would be an employee on a terminal leave of absence during the Resignation Period. Accordingly, First UNUM's motion for summary judgment is denied.

### V. *First UNUM's Motion against CDC*

First UNUM argues for summary judgment dismissing CDC's claim for contribution on the ground that "because [Keiser's] alleged disability is not covered by the [UNUM] Policy, First UNUM can have no liability to indemnify CDC against any liability CDC may have to the plaintiff." (First UNUM's Mem. in Supp. 13.) Be-cause this Court has found that First UNUM's liability under the UNUM Policy is a question of fact that cannot be resolved on summary judgment, First UNUM's motion against CDC is denied.

### VI. *Harman's Motion against CDC*

On August 30, 2000, CDC sued Harman for subrogation on any judgment entered against CDC. (*See* CDC's Answer, Cross Claim, and Third–Party Compl. ¶ 61.) Harman moves for summary judgment on the ground that Keiser released all claims against him pursuant to a February 25, 1998 settlement agreement resolving a Mississippi state court action concerning the auto accident. (Harman's 56.1 Stmt. 3.) Harman asserts that the release extinguishes CDC's claim pursuant to section 15–108 of New York General Obligations Law. At oral argument, CDC represented that it did not oppose Harman's motion because "[he] paid the full amount of the policy and ... [has] no further liability." (Tr. at 7.) Accordingly, Harman's motion for summary judgment is granted.

### CONCLUSION

For the reasons set forth above, CDC's motion for summary judgment against Keiser is denied. First UNUM's motion for summary judgment against Keiser is denied and its motion against CDC for summary judgment is also denied. Third-party defendant Harman's motion for summary judgment against CDC is granted. Keiser's third cause of action for breach of contract is dismissed. Counsel are directed to appear for a pretrial conference in Courtroom 618 at the United States Courthouse, Foley Square, 40 Centre Street on April 27, 2001 at 9:15 a.m.

SO ORDERED.