**DIAGNOSTIC MEDICAL ASSOCIATES, M.D., P.C. Plaintiff,**

v.

**The GUARDIAN LIFE INSURANCE COMPANY OF AMERICA Defendants.**

No. 98 CIV. 4838(VM).

United States District Court, S.D. New York.

Aug. 20, 2001.

Geoffrey Richstone, M.D. PC, New York City, Pro se.

David Etkind, Ross & Cohen, LLP, New York City, for Plaintiff.

John C. Weber, Brian L. Greben, New York City, for Defendants.

### DECISION AND ORDER

MARRERO, District Judge.

Plaintiffs in this consolidated action, Diagnostic Medical Association and Dr. Geoffrey Richstone (hereinafter "Richstone"), assert that Defendant, Guardian Life Insurance Company of America (hereinafter "Guardian"), inadequately reimbursed Richstone for medical treatment that he allegedly provided. Guardian has moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on two causes of action relating to medical services Richstone provided to Abraham Rodriguez (hereinafter "Rodriguez"). For the reasons set forth below, Guardian's motion for summary judgment is granted, and the two claims pertaining to the purported treatment of Rodriguez are hereby dismissed.

## I. FACTS AND PROCEDURAL HISTORY

The underlying facts giving rise to Richstone's complaint are not in dispute. Guardian provided major medical insurance to Rodriguez pursuant to Group Policy No. 218847 (hereinafter "the Plan"), and the insurance policy fell within the scope of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA"), 29 U.S.C. § 1001, et seq. (See Defendant's Notice of Motion for Summary Judgment, dated May 8, 2000 (hereinafter "Defendant's Notice of Motion"), Ex. D). Section 1132(a)(1)(B) of ERISA allows suits to recover benefits under an applicable plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 108, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989).

Richstone alleges that he provided medical care to Rodriguez on three separate occasions, two visits on November 27–28, 1995 and one on December 4, 1995. According to Richstone, his treatment of Rodriguez included a number of procedures such as a chest x-ray, echocardiogram, EKG, spirometry, venipuncture and blood tests. (See Defendant's Notice of Motion, Ex. I).

The parties' dispute focuses on the aftermath of Richstone's alleged treatment of Rodriguez and on Guardian's decision to deny Richstone reimbursement for his claimed procedures.

Richstone's medical office submitted claims to Guardian for the alleged costs of the services on March 20, 1996 for Rodriguez's November visits and on April 2, 1996 for the December visit. (Plaintiff's Affidavit in Opposition, dated June 6, 2000 (hereinafter "Plaintiff's Affidavit"), Exs. 1–3). Richstone requested that Guardian reimburse him for a total of $4,615.00 of which $30.00 was later withdrawn. (Defendant's Statement Pursuant to Rule 56.1, dated May 8, 2000 (hereinafter "Defendant's Rule 56.1 Statement"), at ¶ 5). When he submitted these original claim forms, Richstone provided no documentation or information establishing that the

tests were actually performed or that they were even necessary.

In response to the claim forms, Guardian sent Richstone a correspondence on April 10, 1996 (hereinafter the "April 10 Letter"), stating that it could not reimburse Richstone's claims without additional information. (Defendant's Notice of Motion, Ex. E). The April 10 Letter contains language which the Court believes to be essential to resolving Richstone's claims in the present case. That letter from Guardian explained that Richstone was required to submit "a written statement from the attending physician which documents the medical necessity of this service. This statement must include the diagnosis, prognosis, and estimated duration of treatment." More importantly, the April 10 Letter unambiguously stated that more documentation would be required for Richstone to substantiate his claims: "Please submit all medical treatment records and pertinent information for this treatment." (*Id.*).

Richstone replied to the April 10 Letter by sending a few pages of handwritten notes, much of which was largely illegible, and what Guardian acknowledges to be blood test results from Rodriguez's November 27 visit. (Defendant's Notice of Motion, Ex. F). Noticeably absent from his reply, however, were treatment records, test results or any other documentation for several other procedures that Richstone alleges he provided and for which he was seeking reimbursement.

Guardian gathered all of the documentation that Richstone provided and submitted it, along with the claims, to Professional Peer Review, Inc. (hereinafter "PPR"), an independent company that employs practicing physicians to review claims for medical insurers. On May 24, 1996, PPR issued its findings on Richstone's claims. PPR found that the charges were improperly billed and documented. Specifically, PPR concluded that Richstone's documentation lacked historical information, that a number of his claimed procedures (the EKG and Spirometry) were not indicated, that other procedures were not documented, and that a number of claims were improperly unbundled.[1] (Defendant's Notice of Motion, Ex. I).

Richstone asserts that PPR is not an impartial or independent reviewer and that it is in fact beholden to the insurance companies that retain it. In addition, Richstone contends that the review was too perfunctory to be fair and accurate. (*See* Plaintiff's Counter Statement Pursuant to Rule 56.1, dated June 7, 2000 (hereinafter "Plaintiff's Counter Statement"), at ¶ 9).

On June 11, 1996, Guardian sent Richstone "Explanation of Benefits" forms (hereinafter "EOB" or "EOBs"), which detailed his November 1995 claims and how much of each claim Guardian was willing to reimburse. Out of a total claim of $4,625.00, Guardian paid $461.00. (Defendant's Notice of Motion, Ex. J). When it felt that a particular item should be denied, Guardian provided a "Remark Code" stating that "[c]harges exceed the reasonable and customary allowance," or in one case that, "[t]hese charges have been combined with those of the primary procedure." (*Id.*).

Richstone sent a letter to Guardian on July 24, 1996, purportedly explaining why the November tests and treatments were necessary. (Plaintiff's Affidavit, Ex. 6). Richstone also asserted that the bills he

---

1. Guardian contends that several of Richstone's alleged procedures constituted a single test with a standard fee, rather than separate tests "unbundled" and billed individually, as Richstone had itemized.

submitted to Guardian, containing his diagnosis of the patient, should be considered adequate documentation by themselves.

On August 13, 1996, Guardian issued an EOB for Rodriguez's December tests and treatment. (Defendant's Notice of Motion, Ex. K). The EOB denied all claims, stating that "[c]harges will be considered after we receive the requested information." The "requested information" refers to the requests in the April 10 Letter which sought all medical records and pertinent information related to the alleged treatment of Rodriguez for the November procedures. Richstone responded by sending another letter of explanation on November 26, 1996, additional handwritten notes and blood test results, apparently from Rodriguez's December visit. (*Id.*, Ex. G).

Guardian collected all of the documents relating to Rodriguez's December visit and submitted them to a second peer review organization, the Medical Review Institute of America (hereinafter "MRI"). MRI issued its report on October 24, 1996, concluding also that Richstone's claims were improperly documented and that the need for tests had not been established. (*Id.*, Ex. L). MRI's reviewer stated that the "[p]roblem history [is] mostly illegible .... The rationale for the lab tests in this case is not apparent, because the history is not legible." (*Id.*).

On the basis of this second peer review, Guardian issued an additional EOB on November 21, 1996 which reimbursed Richstone $88.00 for $575.00 of claimed charges. This EOB also remarked that "[c]harges exceed reasonable/customary amount or rate in certificate book" and that "[m]edical necessity could not be established." (Plaintiff's Affidavit, Ex. 11).

Richstone sent a final letter of protest on November 26, 1996, relating to his claims for Rodriguez's December 1995 visit. (Defendant's Notice of Motion, Ex. N).

Again, Richstone attempted to substantiate his claims without including any meaningful documentation. Guardian submitted Richstone's November 26 letter, along with all the other documents submitted to date, to MRI for a third and final review of Richstone's claims. On January 27, 1997, MRI affirmed its prior conclusion that Richstone's claims were unworthy of reimbursement. (*Id.*, Ex. O).

The factual record establishes that Richstone failed to provide any other documentation prior to this action, including hard copies of certain test results, such as the spirometry, EKG and echocardiogram results. (*See* Defendant's Rule 56.1 Statement at ¶ 17).

## II. STANDARD OF REVIEW

### A. STANDARD OF REVIEW UNDER RULE 56

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." *Samuels v. Mockry,* 77 F.3d 34, 35 (2nd Cir.1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). In deciding a motion for summary judgment therefore, a court should not attempt to resolve all factual issues; rather, it should weigh facts that are not disputed in order to see whether they render additional adjudication unnecessary. The moving party bears the burden of proving that no genuine issue of material fact exists or that due to the paucity of evidence from the non-movant, no rational jury could find in favor of the non-moving party. *Gallo v. Prudential Residential Services, L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994). The court's role is limited to "issue-finding ... [and] does not extend to issue-resolution." *Id.*

at 1224. The court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Id.* at 1223.

The Second Circuit has also stated that "[a] court may only grant summary judgment in a contract dispute where the language of the contract is wholly unambiguous." *Keiser v. CDC Investment Management Corp.*, 160 F.Supp.2d 512, 518 (S.D.N.Y.2001) (citations omitted).

Nonetheless, the burden on the party moving for summary judgment should not be so onerous as to totally prevent a justified motion from ever being granted. The Supreme Court has stated that "[a] judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202.

## B. STANDARD OF REVIEW IN ERISA CASES

■ In ERISA cases, the standard for summary judgment must also be viewed in conjunction with the standard of review of administrative actions under the ERISA guidelines. Guardian claims that under ERISA, its decision to deny Richstone reimbursement for his services should be reviewed under an arbitrary and capricious standard, in effect shifting the burden to Richstone to prove that there was no justifiable basis for Guardian's actions. In *Firestone*, the United States Supreme Court held that ERISA claims based on a denial of benefits by a fiduciary under § 1132(a)(1)(B) are to be reviewed under a default *de novo* standard. 489 U.S. at 115, 109 S.Ct. 948. Under *de novo* review, the ERISA plan would be interpreted in light of standard contract jurisprudence, and ac-

cording to the rule of *contra preferentum*, that is, when one party in a dispute was responsible for drafting the contract at issue (presumably the stronger party), all ambiguities in the contract are resolved against the drafting party. *See Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 443 (2d Cir.1995).

■ However, if an ERISA plan insurer or administrator can establish that "the benefit plan gives the administration or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," then a court reviewing a denial of benefits to a policyholder must apply the much more deferential "arbitrary and capricious" standard of review. *Firestone*, 489 U.S. at 115, 109 S.Ct. 948. Under the arbitrary and capricious standard of review, the rule of *contra preferentum* is inapplicable. *Pagan*, 52 F.3d at 443–44. According to Guardian, no arbitrary and capricious conduct on its part can be proven, and thus Richstone's complaint should be dismissed. (Defendant's Memorandum Of Law in Support of Motion for Summary Judgment, dated May 8, 2000 (hereinafter "Defendant's Memorandum"), at 11–19.)

■ Guardian apparently tailored the language in the Plan to track the Supreme Court's language in *Firestone*. It states: "The Guardian is the Claims Fiduciary with discretionary authority to determine eligibility for benefits and to construe the terms of the plan with respect to claims." (Defendant's Notice Of Motion, Ex. D at 73). The plan then goes on to describe the procedure for its administrative review of denied claims, as is at issue in the present case.

Richstone does not dispute that the Plan gives Guardian the discretionary authority to review and decide claims. However, Richstone argues that "Defendant's plan is

silent as to whether its plan fiduciaries have any discretionary authority as to its administrative review of a denied claim," and thus the *de novo* standard should apply to the Court's review of that subsequent part of the claims process. (Plaintiff's Memorandum Of Law In Opposition, dated June 7, 2000 (hereinafter "Plaintiff's Memorandum"), at 10–11).

Although it is tempting to label Richstone's claim novel, as it appears to be one that this Circuit has yet to address, Richstone's assertion is based on a strained and untenable interpretation of Guardian's policy. In essence, Richstone asks this Court to read into the Plan a bright line bifurcating decisions on denial of claims and the subsequent review of those decisions. In addition, his argument would require the Court to find that Richstone had unambiguously triggered the so-called review or appeals phase of his claims. This, in turn, would compel the Court to read into the Plan Guardian's intention to abrogate its clear discretion in deciding claims when it later reviewed those initial decisions. After performing all of these interpretive leaps on Richstone's theory, this Court would then be required to apply a *de novo* standard of review to Guardian's denial. Neither the facts on record nor the applicable case law demands that the Court to adopt Richstone's interpretation.

The plain text of the Plan clearly evidences Guardian's intention to exercise "discretionary authority to determine eligibility for benefits and to construe the terms of the plan with respect to claims." (Defendant's Notice of Motion, Ex. D at 73). Thus, even if this Court were to validate Richstone's theory, it is still bound by *Firestone* and its progeny, which require an application of the deferential arbitrary and capricious standard for the *ini-*

*tial decision* on the claim. 489 U.S. at 115, 109 S.Ct. 948. A plan administrator's subsequent review of an appeal does not alter this Court's standard of review of the initial denial, which is the operative decision at issue. Even if it chose to isolate Guardian's review of its decision to deny benefits, this Court's own review would still be guided by the arbitrary and capricious standard governing the underlying denial.

Although Guardian's express reservation of discretion in deciding claims ends the inquiry of the appropriate standard of review, it is worth noting that Richstone's argument would require a strained interpretation of the Plan. Guardian's express discretion covers the broad category of "eligibility for benefits." (*Id.*). No provision of the Plan limits in any way this exercise of discretion. Therefore, Richstone's interpretation would require the Court to abrogate this broad reservation of discretion in eligibility decisions merely because Guardian chose to review carefully its initial decision to deny benefits. The facts of record fail to support such a reading. It is clear that the eleven-month exchange of correspondences between the parties constituted a single, indivisible process: an attempt to substantiate Richstone's claims. None of Richstone's letters explicitly trigger a distinct review or appeals phase. Even if this Court found such a bifurcation of determination and review, they would both arguably fall under the process of "eligibility for benefits," over which Guardian has expressly reserved discretionary authority.

 For the foregoing reasons, the Court finds that under the applicable standard of review, the relevant inquiry is limited to whether Guardian's denial of Richstone's claims was arbitrary and ca-

pricious.[2] Under the arbitrary and capricious standard, Guardian's determination receives a corresponding degree of deference: "[courts] may overturn a decision to deny benefits only if it was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Pagan* at 442 (quotations and citations omitted). Furthermore, the Court is precluded from substituting its own judgments, and the administrator's decision will be upheld as long as it was reasonable. *See id.* Finally, courts have held that "[i]n determining whether a plan complies with applicable regulations, substantial compliance is sufficient." *See Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 690 (7th Cir.1992) (citations omitted).[3]

## III. DISCUSSION

■ Guardian moves for summary judgment on the grounds that Richstone cannot establish that its decision to deny him benefits was arbitrary and capricious.

---

**2.** In addition, Richstone attempts to shore up his conclusion that the de novo standard should apply by asserting that Guardian was operating under a conflict of interest. Under the relevant case law, however, merely alluding to a possible conflict of interest is not enough. A claimant must show that the administrator was in fact influenced by the alleged conflict of interest. *Sullivan v. LTV Aerospace & Defense Co.*, 82 F.3d 1251, 1255 (2d Cir.1996). Richstone has failed to satisfy his burden that Guardian was in fact influenced by a conflict of interest. The court finds dispositive of this issue the fact that Guardian made three separate submissions to independent peer review organizations in an attempt to objectively evaluate Richstone's claims. *See Elsroth v. Consolidated Edison Company of New York, Inc.*, 10 F.Supp.2d 427, 435 (S.D.N.Y.1998) (rejecting an assertion of conflict of interest on the grounds that insurance company referred claim to third-party that arranged for review by two independent physicians).

**3.** In *Halpin*, the Seventh Circuit further clarified the application of the appropriate standard: "[t]he application of these standards to

Richstone responds with three principal contentions: (1) by failing to specify why his claims would not be reimbursed and what information would be necessary to validate his claims, Guardian's denial of his claims was not in compliance with the rules of ERISA and with Guardian's own stated policy; (2) Guardian failed to send him the guidelines for reasonable and customary allowances, again violating established procedures; and (3) with respect to the peer reviews, Guardian failed to submit documentation that Richstone provided, namely the blood test results, which prevented the reviewers from adequately evaluating his claims.

## A. ERISA GUIDELINES

■ Richstone claims that Guardian violated the requirements of ERISA by failing to provide him the reasons for its denial and failing to specify what documentation would validate his claims.[4] On the

---

a particular ... situation is necessarily a fact-intensive inquiry. The purpose of the statute and regulations must be our guide: was the beneficiary supplied with a statement of reasons that, under the circumstances of the case, permitted a sufficiently clear understanding of the administrator's position to permit effective review?" *Id.* at 690.

**4.** 29 U.S.C. § 1133 of ERISA states:

In accordance with regulations of the Secretary, every employee benefit plan shall: (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

Furthermore, regulations promulgated under this section require that the initial notice of claim denial contain: (1) The specific reason or reasons for the denial; (2) Specific

basis of the factual record, Richstone's contentions are wholly unsupported. In response to Richstone's claim for benefits, Guardian sent the April 10 Letter which clearly stated that more documentation was necessary "before the claim can be processed." (Defendant's Notice of Motion, Ex. E). The April 10 Letter unambiguously requested a written statement establishing the medical necessity for the claimed procedures, and more importantly, it asked for "all medical treatment records and pertinent information for this treatment." (*Id.*).

The Court finds no ambiguity in the April 10 Letter. Richstone was asked to do much more than simply claim that Guardian owed him money for services allegedly provided. Guardian needed the documents establishing that the services were actually performed and necessary for the patient's health. In later correspondences, Richstone offers to provide hard copies of the tests performed, but the more probative point is that Richstone never sent the results of several tests in response to the April 10 Letter. (*See* Plaintiff's Affidavit, Ex. 6). It is almost inconceivable that in a dispute over reimbursement for medical services, a practicing physician would neglect to send the relevant hard copy test results that would establish his claims. This failure itself has some bearing and weight in an overall assessment of whether Guardian's response under the circumstances may reasonably be deemed arbitrary, capricious and unsupported by any factual bases. In any event, it is clear that the April 10 Letter explicitly describes the documents that would be necessary to establish Richstone's claims.

In response to the April 10 Letter, Richstone sent a few pages of illegible notes and some blood test results. Unable to establish the validity of Richstone's claims with this limited documentation, Guardian sent EOB forms denying or reducing Richstone's claims. The EOBs contained notations which clarified why Richstone's claimed charges were denied or reduced. The EOBs relating to the November visits stated that "charges exceed the reasonable and customary allowance," and that "these charges have been combined with those of the primary procedure." (Defendant's Notice of Motion, Ex. J). The EOBs relating to the December visit stated that a decision on the charges depended on receipt of the information previously requested. (Defendant's Notice of Motion, Ex. K). Read in conjunction with the April 10 Letter, the EOBs clearly explain the reasons for denying most of the disputed claims: Richstone had failed in the first instance to properly document his claims; based on that, his charges exceeded the reasonable and customary fees, or were improperly unbundled.

On the basis of these correspondences, this Court is persuaded that Guardian's denial of Richstone's claim was supported by substantial evidence and not erroneous as a matter of law and that a fair-minded jury could not rule otherwise. Accordingly, the Court finds that Guardian did not violate ERISA regulations. The April 10 Letter and the EOBs informed Richstone of the reasons for Guardian's denial and of the documents that would be necessary to validate his claims. Richstone had multiple opportunities to cure the deficiencies in his claims, and Guardian afforded him full

reference to pertinent plan provisions on which the denial is based; (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review. 29 C.F.R. § 2560.503–1(g).

and fair review on three occasions with the sparse documentation that he provided.

## B. GUIDELINES FOR REASON-ABLE AND CUSTOMARY CHARGES

■ Richstone also cites *Doe v. Travelers Ins. Co.*, 971 F.Supp. 623, 634 (D.Mass. 1997), *affirmed in part, reversed in part*, 167 F.3d 53 (1st Cir.1999), for the proposition that Guardian's failure to provide him with its guidelines for reasonable and customary charges was arbitrary and capricious under ERISA. *Travelers*, however, does not support that conclusion.

First, *Travelers* explicitly conditioned a finding of arbitrary and capricious conduct on a prior request for such guidelines from the claimant. 971 F.Supp. at 633–34 (citing ERISA, 29 C.F.R. § 2520.102–3). Richstone does not contend, and nothing in the record suggests, that Richstone made such a request.

Second, Richstone has overlooked the import of the First Circuit's review of *Travelers*. In holding that the insurance company did not act arbitrarily or capriciously in failing to send its guidelines, the court found that the "guidelines may have been used by Travelers, but Travelers was not bound to use them, nor did patients have any legal rights under them. Travelers could consult or disregard this or any other set of ... guidelines, medical textbooks, articles, or advisors in making its judgment." *Doe v. Travelers Ins. Co.*, 167 F.3d 53, 60 (1st Cir.1999).

Therefore, the fact that Richstone did not receive Guardian's guidelines for reasonable and customary charges does not amount to arbitrary or capricious conduct relating to Guardian's review and denial of Richstone's claims.

## C. SUBMISSION OF THE BLOOD TESTS

Richstone further asserts that Guardian was negligent in not supplying the results of Rodriguez's November blood test to the second and third peer reviews. He bases his conclusion on a reading of one line in the peer review report: "If previous lab data were abnormal, this would change my opinion regarding the above-mentioned labs." (Defendant's Notice of Motion, Ex. O). In addition, Richstone attempts to draw a negative inference from the fact that MRI's response to Richstone's subpoena did not include the blood tests.

The Court finds that, taken as a whole, the record does not support a material issue of fact regarding Guardian's submission of blood tests. First, Guardian has submitted an affidavit of its Quality Assurance Coordinator, Sharon Dash (hereinafter "Dash"). (Affidavit of Sharon Dash, sworn to May 8, 2000, at ¶ 4). Dash confirms that Guardian "submitted everything the plaintiff had sent us to the consultant." (*Id.*) Furthermore, it would be difficult to conclude that MRI never received the blood tests because the second peer review refers to the results of the blood tests throughout its report. (*See* Defendant's Notice of Motion, Ex. L). The third and final report of MRI also establishes that all previously submitted records that were reviewed in the second peer review, including the blood tests, were again analyzed by MRI in its final review: "This is a re-review (see previous review # 238598, dated 10/24/96). All of the submitted records were reviewed, including an appeal letter from GR, MD (11/26/96)." (Defendant's Notice of Motion, Ex. O).

Against these uncontroverted facts, Richstone points to one inconclusive line: "If previous lab data were abnormal, this would change my opinion regarding the above mentioned labs." (*Id.*) Rather than

supporting Richstone's conclusion that the blood tests were not submitted by Guardian, this statement merely expresses an unfulfilled conditional: if the test results had been abnormal, a different conclusion might have been warranted. But this does not prove Richstone's contention that no blood tests were actually submitted. Again, the record reflects the sworn testimony of a Guardian employee that all blood tests were submitted, the discussion of blood tests in the second peer review report and a clear statement that the final reviewer examined all the documents that had been submitted to date. In short, Richstone's interpretation of the final report and his attempt to draw a negative inference fail to overcome the preponderance of evidence supporting the notion that all of Richstone's documentation, including the blood tests, were submitted to the peer reviewers.

Having disposed of Richstone's primary contentions, the Court concludes that his other arguments similarly fail. Richstone avers that Guardian also failed to send him a detailed description of the Plan's claim review procedures and to identify specific Plan provisions on which the denial was based. These assertions are again addressed by the correspondences that Guardian sent to Richstone. The EOBs, for instance, specifically mention that the claims were "reviewed by an independent consultant." (Defendant's Notice of Motion, Ex. J). When read in conjunction with the April 10 Letter, the review procedures were adequately outlined: Richstone was instructed to send all of the medical records relating to his alleged treatment of Rodriguez which would be submitted along with his claim to an independent peer review organization. Furthermore, the EOBs and Guardian's final letter of February 19, 1997 adequately reference the applicable Plan provisions. Specific reasons are given for the denial of the claims, and

explanations of key terms such as "reasonable charges" are sufficiently clear. (*Id.*, Exs. J, P). Taken as a whole, these responses satisfy the standard of "substantial compliance" with § 1133 of ERISA and the regulations thereunder. *See Halpin*, 962 F.2d at 690.

## IV. CONCLUSION

The factual record convincingly establishes that Guardian attempted to evaluate Richstone's claims fairly over a period of eleven months and to grant him multiple opportunities to cure the deficiencies Guardian identified in Richstone's documentation. The April 10 Letter instructed Richstone that he was required to send all medical records relating to Rodriguez's visits in order to validate his claims. The EOBs stated why Guardian had denied the claims. And Guardian subjected the claims to three separate independent peer reviews, evidencing its intent to give Richstone a full and fair hearing. Under the circumstances, Guardian's decision to deny or to reduce Richstone's claims was not arbitrary or capricious. Furthermore, Guardian was in complete or, at a minimum, substantial compliance with all of its obligations under ERISA.

### ORDER

For the reasons set forth above, it is hereby

**ORDERED**, that Guardian's motion for summary judgment is granted, and the two claims relating to Rodriguez are hereby dismissed.

**SO ORDERED.**