Susan DeFELICE, Plaintiff–Appellee,

v.

**AMERICAN INTERNATIONAL LIFE ASSURANCE COMPANY OF NEW YORK, Defendant–Appellant.**

No. 540, Docket 96–7512.

United States Court of Appeals, Second Circuit.

Argued Dec. 4, 1996.

Decided April 21, 1997.

Mark E. Schmidtke, Boca Raton, FL
(Leonard A. Sheft, Edward Hayum, Howard

K. Fishman, Sheft, Golub & Kamlet, New York City; Jaime Ruth Ebenstein, J.R. Ebenstein Consultants, Boca Raton, FL; Steven P. Del Mauro, Del Mauro & Associates, Morristown, NJ, of counsel), for Defendant–Appellant.

Norman A. Senior, New York City (Jeffery H. Sheetz, Gerard J. Costello, Greenfield Stein & Senior, L.L.P., of counsel), for Plaintiff–Appellee.

Before NEWMAN, Chief Judge, OAKES and WINTER, Circuit Judges.

OAKES, Senior Circuit Judge.

Appellant American International Life Assurance Company of New York ("American") appeals from a judgment entered April 3, 1996, after jury trial, in the United States District Court for the Southern District of New York, Allen G. Schwartz, *Judge,* in favor of Plaintiff–Appellee Susan DeFelice. Following the death of her husband, Kent DeFelice, Ms. DeFelice sued American under ERISA, 29 U.S.C. §§ 1001, et seq., asserting that because her husband had died by choking, she was entitled to recovery in the amount of $1 million on his accidental death policy. American contended that Mr. DeFelice died from a massive coronary, which does not constitute "accidental death" within the meaning of the policy. On appeal, American asserts that the district court erred in four respects: 1) by submitting the action seeking recovery of benefits under an ERISA plan to a jury; 2) by expanding the evidentiary record at trial beyond the scope of the administrative record available to the ERISA Appeals Committee; 3) by not admitting the entire administrative record into evidence; and 4) by denying American's request for judgment as a matter of law.

As to the first assertion, we remand to the district court for findings consistent with this opinion. We affirm the court on the second point of appeal, reverse on the third, and withhold decision on the fourth in light of the remand.

# I

## Facts

We need not recount the extensive factual and medical record related to this trial in order to decide the legal points. We briefly set forth the basis for the dispute, and the procedural history of the case.

Kent DeFelice died on September 10, 1993, while on a business trip in Mexico City. He was sitting at the breakfast table with his colleagues when suddenly, apparently without warning, he collapsed onto the table. After several attempts to administer CPR, he was pronounced dead by an emergency medical service some time later. Drs. García Rojas, Noguez Blancas and Sosa Guadarrama, the Mexican doctors who performed Mr. DeFelice's autopsy, noted the presence of "pink liquid" in the stomach and trachea along with obstruction in the trachea, and Dr. Rojas stated his conclusion that the death was due to choking. Although Dr. Rojas noted that Mr. DeFelice's heart was enlarged, he stated that many athletes had such enlarged hearts, and that the condition was not uncommon.

Ms. DeFelice submitted her claim for accidental death benefits on October 25, 1993. American had cause to doubt the conclusions of the autopsy report, however, and thus initiated its own investigation on November 4, 1993. The results of the preliminary investigation led American to believe that Mr. DeFelice had not died of choking, and thus it sought to obtain complete medical records as well as tissue samples. After reviewing Mr. DeFelice's records, American's in-house experts stated that the enlargement of the heart was likely due to a cardio-pulmonary condition, and indicated that it was highly unlikely that Mr. DeFelice had choked to death. They based this opinion on the absence of any gastric contents and the testimony of witnesses who said that he had had nothing but coffee to eat or drink that morning.[1] The American experts thus opined that

---

1. American's experts also stated that this evidence was bolstered by the testimony of witnesses who said that Mr. DeFelice did not reach for his throat or otherwise indicate that he was in distress, as do ordinary choking victims, prior to passing out. Ms. DeFelice disputes American's version of this testimony, stating that several witnesses indicated that Mr. DeFelice was in severe distress. Ms. DeFelice's case was based upon the theory that Mr. DeFelice had died from

Mr. DeFelice had died of a heart attack. Because heart attacks are not considered "accidents" under the American accidental death policy, American denied Ms. DeFelice's claim.

The case proceeded to an ERISA Appeals Committee consisting entirely of American employees, which ruled in favor of American. Ms. DeFelice then filed suit in federal court pursuant to 29 U.S.C. §§ 1001, et seq.

On December 9, 1994, Plaintiff made a motion for trial by jury. On November 13, 1995, over American's objections, Judge Schwartz granted that motion. The court examined the rulings of the eight other circuits which had addressed the issue of whether a right to trial by jury exists in ERISA claims, and determined, contrary to those opinions, that it did exist. The case then proceeded to trial, and the jury held in Ms. DeFelice's favor.

American challenges Judge Schwartz's decision to hold the trial by jury, as well as the decisions to admit evidence not in front of the ERISA Appeals Committee, and not to admit certain other evidence which was before the Committee. American also asserts that it was entitled to judgment as a matter of law.

## II

### Discussion

#### A. The District Court's Grant of a Jury Trial.

##### 1. Trial By Jury

■ Appellant American's first argument is that an action for ERISA plan benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), is equitable in nature and contains no right to trial by jury. American

"silent aspiration," wherein the victim's stomach content goes up from the stomach through the esophagus and back down the trachea into the lungs.

2. Prior to our ruling in *Sullivan*, however, every other federal circuit to have addressed this question had ruled that there was no such right to jury trial. *See Borst v. Chevron Corp.*, 36 F.3d 1308, 1323–24 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1699, 131 L.Ed.2d 561

cites to our recent decision in *Sullivan v. LTV Aerospace and Defense Co.*, 82 F.3d 1251 (2d Cir.1996), which came down approximately six months after the district court's opposite ruling on this point.[2] Appellant also argues that *Sullivan*'s holding is retroactive, and that the jury's verdict must therefore be vacated and the case remanded to the district court for bench trial. Plaintiff responds that her claim is more properly characterized as a legal claim for breach of contract, with the relief of money damages, and that she therefore has an absolute right to trial by jury under the Seventh Amendment. *Chauffeurs, Teamsters and Helpers Local No. 391 v. Terry*, 494 U.S. 558, 110 S.Ct. 1339, 108 L.Ed.2d 519 (1990); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989); *Ben Cooper, Inc. v. Insurance Co. of Pennsylvania (In re Ben Cooper, Inc.)*, 896 F.2d 1394 (2d Cir.1990).

American's reliance upon *Sullivan* is well-placed. *Sullivan* made clear that cases involving ERISA benefits are inherently equitable in nature, not contractual, and that no right to jury trial attaches to such claims. *Sullivan*, 82 F.3d at 1257–59. Though *Sullivan* and most of the cases cited in footnote 2 rejected a jury trial where the issue was whether a plan administrator's decision was arbitrary and capricious, and the inappropriateness of this issue for jury consideration was part of the rationale of *Sullivan*, *see* 82 F.3d at 1258 (citing *Berry v. Ciba–Geigy Corp.*, 761 F.2d 1003, 1006–07 (4th Cir.1985)), we think the trust-like nature of the remedy renders a claim like DeFelice's equitable, even though review of the denial is *de novo*. *See Blake v. Unionmutual Stock Life Insurance*, 906 F.2d 1525, 1526 (11th Cir.1990).

■ *Sullivan* is also without question retroactively applicable. Ms. DeFelice therefore did not have a right to have her claim

(1995); *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649–50 (3d Cir.1990); *Daniel v. Eaton Corp.*, 839 F.2d 263, 268 (6th Cir.1988); *Howard v. Parisian, Inc.*, 807 F.2d 1560, 1566–67 (11th Cir.1987), *Berry v. Ciba–Geigy Corp.*, 761 F.2d 1003, 1006–07 (4th Cir.1985); *Blau v. Del Monte Corp.*, 748 F.2d 1348, 1357 (9th Cir.1984); *In re Vorpahl*, 695 F.2d 318 (8th Cir.1982); *Wardle v. Central States, S.E. & S.W. Areas Pension Fund*, 627 F.2d 820 (7th Cir.1980).

tried by a jury. Here, however, because she has already received a jury trial, our question is more properly stated in the inverse: Does American have a right to a bench trial? We hold that American does have this right for this equitable claim.

▆ With regard to the role of the jury in this case, we note, as did *Sullivan*, the long-standing tradition in common law courts that a trial court may consult with an advisory jury during a bench trial so long as the court retains the ultimate responsibility for findings of fact and conclusions. Fed.R.Civ.P. 39(c); *(American) Lumbermens Mut. Cas. Co. of Illinois v. Timms & Howard, Inc.*, 108 F.2d 497 (2d Cir.1939); Wright & Miller, *Federal Practice & Procedure: Civil 2d* § 2335. However, the *Sullivan* district court had explicitly adopted the jury's findings as its own, yet we remanded with instructions to explain how the findings were made. *Sullivan*, 82 F.3d at 1261. Here, the court has neither made its own findings nor adopted those of the jury. Because American may have suffered prejudice as a result of the jury trial, i.e., an outcome that the court as fact-finder would not have reached, we must remand to the district court with instructions to make its own factual findings and conclusions, in reliance upon the advisory jury's verdict if the court so chooses, and to explain how it arrived at those findings and conclusions.

### 2. Judgment as a Matter of Law

We decline to address Appellant's argument that it was entitled to judgment as a matter of law, pending Judge Schwartz's findings upon remand.

### B. The District Court's Review

### 1. Standard of Review

▆ Both parties agree with the district court's decision that *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 956–57, 103 L.Ed.2d 80 (1989), mandates *de novo* review of the ERISA Appeals Committee's denial of benefits. *See id.* ("a denial of benefits ... is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe terms of the plan."). Appellant, however, argues that *de novo* means a *de novo* review only of the record previously established by the Committee, not literally a *de novo* trial.

Courts presented with this issue have reached varied results. The Sixth Circuit has held that no evidence beyond the administrative record is permissible, on the grounds that district courts ought not to become "substitute plan administrators." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966–67 (6th Cir.1990). While the Eleventh Circuit seems comfortable allowing district courts to rely upon entirely new evidence without restriction, *Moon v. American Home Assurance Co.*, 888 F.2d 86, 89 (11th Cir. 1989), other courts, including the Eighth Circuit, have permitted some additional evidence where the administrative record is inadequate to conduct a proper review of the administrative decision. *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir.1993) (decision within discretion of trial court, which should not be exercised absent good cause); *Quesinberry v. Life Ins. Co. of N. Amer.*, 987 F.2d 1017, 1021–27 (4th Cir.1993) (en banc); *cf. Luby v. Teamsters Health, Welfare, and Pension Trust Funds*, 944 F.2d 1176, 1184–85 (3d Cir.1991) (where record is sufficiently developed below, court may limit review to that evidence even upon *de novo* review). The Second Circuit has considered one aspect of this issue, and has held that additional evidence may be considered upon *de novo* review of an issue of plan interpretation. *See Masella v. Blue Cross & Blue Shield of Connecticut, Inc.*, 936 F.2d 98, 103–05 (2d Cir.1991). *Masella* explicitly did not decide whether additional evidence may be considered upon *de novo* review of factual issues. It noted, however, that a claimant might be obligated to present to plan administrators all evidence regarding the claimant's condition, *id.* at 105, but would be unfairly burdened by an obligation to present expert testimony to plan administrators on an issue of plan interpretation. *Id.*

In the pending case, we need not definitively resolve the issue preserved in *Masella* because, regardless of the permissible range of evidence in other cases involving *de novo*

review of factual issues, this case involves a conflicted administrator. The ERISA Appeals Committee which reviewed Ms. DeFelice's claim was comprised entirely of American employees—hardly a neutral decision-making body. Moreover, several members of the Committee testified that there existed no established criteria for determining an appeal. To add insult to injury, the Committee apparently had a practice of destroying or discarding all records within minutes after hearing an appeal.

The policy expressed in *Perry* that district courts should not become "substitute plan administrators" is inappropriate where such a blatant conflict exists at the administrative level. In such circumstances, courts *must* exercise fully their power to review *de novo* and to *be* substitute administrators. Plaintiffs are utterly helpless against the whim of the conflicted body's interpretation of the facts. The normal scope of limited "*de novo*" review is inappropriate where the fairness of the ERISA appeals process cannot be established using only the record before the administrator.

■ We build upon *Masella* with our holding today by viewing it as a step in our circuit's jurisprudence, which is evolving in a manner similar to the rule set out by the Eighth Circuit in *Donatelli*. That is, the decision whether to admit additional evidence is one which is discretionary with the district court, but which discretion ought not to be exercised in the absence of good cause. We apply that principle by holding that, upon *de novo* review, even purely factual interpretation cases may provide a district court with good cause to exercise its discretion to admit evidence not available at the administrative level if the administrator was not disinterest-

ed. In this situation, the district court may assume an active role in order to ensure a comprehensive and impartial review of the case.

We digress momentarily to make perfectly clear that our decision does not alter the existing standard of review, but only discusses one means by which a court conducts that review. We note this in order to distinguish this case from a line of cases also discussing conflict of interest, but with reference to the alternative standard of review enunciated in *Firestone*. That standard, to be used in situations where "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," *Firestone*, 489 U.S. at 115, 109 S.Ct. at 956–57, is generally referred to as "abuse of discretion." The line of cases interpreting this more deferential standard recently produced *Whitney v. Empire Blue Cross and Blue Shield*, 106 F.3d 475 (2d Cir.1997), which held that *Sullivan* requires a district court to give even a conflicted insurer the same deference as an independent fiduciary. Although we might have preferred that the court adopt the reasoning of *Brown v. Blue Cross and Blue Shield of Alabama, Inc.*, 898 F.2d 1556 (11th Cir.1990) (when ERISA plan beneficiary demonstrates a substantial conflict of interest on the fiduciary's part, the burden shifts to the fiduciary to prove that its interpretation of the plan was not tainted by self interest), *Whitney* indicates that *Sullivan* binds our court to the holding of *Pagan v. NYNEX Pension Plan*, 52 F.3d 438 (2d Cir. 1995), which rejected *Brown*.[3]

■ Without revisiting the issue of the significance of a conflict where review is for abuse of discretion, we hold that where the

---

**3.** We have numerous concerns regarding *Pagan,* which we believe reduces *Firestone*'s ruling as to the impact of a conflict of interest. *Firestone* stated, "[o]f course, if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor in determining whether there is an abuse of discretion.'" *Firestone,* 489 U.S. at 115, 109 S.Ct. at 957 (quoting Restatement (Second) of Trusts § 187 cmt. d (1959)). Yet *Pagan,* while quoting this latter key phrase, minimizes the effect of the conflict by stating that there, the plaintiff "fail[ed] to explain how such an alleged conflict affected the reasonableness of Committee's decision." *Pagan,* 52

F.3d at 443. The *Pagan* plaintiff argued that the conflict colored the decision-makers' decision and influenced them to find the Plan's argument to be the reasonable one. One would not expect to find the decision-makers saying, "In view of our conflict, we find the Plan's construction to be reasonable." *Pagan* has essentially held that if the administrative interpretation is reasonable, then the conflict is of little, if any, consequence. Yet *Firestone* instructs that a conflict is a "factor" in determining whether there has been an abuse of discretion. *Sullivan,* likewise, repeats *Pagan* and again fails to give weight to the conflict because the plaintiff failed expressly to ex-

district court reviews an administrative decision under a plan that does *not* grant such discretion, the review is *de novo* and is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence. A demonstrated conflict of interest in the administrative reviewing body is an example of "good cause" warranting the introduction of additional evidence. Moreover, in contrast with the *Pagan* rule, the plaintiff need not demonstrate that the conflict caused her actual prejudice in order for the court to consider the conflict to be "good cause."

Upon remand, therefore, the district court should not limit its consideration to matters previously appraised in the administrative proceedings.

**2. The District Court's Refusal to Admit the Entire Administrative Record into Evidence**

 The district court denied Appellant's request to admit American's claims file, which was part of the record considered by the ERISA Appeals Committee. Appellee's argument that this decision was proper is essentially one of waiver: Ms. DeFelice asserts that American's apparent capitulation at trial to the court's decision prohibits it from raising the matter on appeal. It is clear from the record, however, that American's counsel did not preserve a formal objection to the court's decision because it agreed with the court that it was inappropriate to present the entire claims file *to the jury*. A general policy underlying the exclusionary nature of many of the Federal Rules of Evidence is the concern for the jury's ability to consider only appropriate evidence; relevant evidence is often excluded due to the risk of confusing or distracting the jury. This policy concern is alleviated to a great extent in a trial to the court, as we have confidence in the trial court's ability to consider only such evidence as is proper under the Rules. *See, e.g., Plummer v. Western Int'l Hotels Co.,* 656 F.2d 502, 505 (9th Cir.1981) (citing E. Cleary, *McCormick on Evidence* § 60, at 137 (2d ed. 1972)). Although American may have

waived a claim to present the entire file to a jury, it did not thereby waive a claim to present the file to the court as fact-finder in the bench trial to which it was entitled.

Upon remand for findings and verdict from the bench, the court may rely upon any evidence which would be properly admitted under the Rules of Evidence, including the claims file.

**Conclusion**

In the absence of the district court's findings, we decline to address whether Appellant was entitled to judgment as a matter of law. Instead, we hold that the jury in this case acted in an advisory capacity, but the district court failed to make the appropriate findings of fact and conclusions necessary to sustain a judgment for Appellee. We thus remand for the court's findings, and instruct the court that, in reviewing the denial of benefits by the ERISA Appeals Committee, it is to consider all of the evidence which was before the Committee, including those parts of American's claims file which are properly considered, and may also consider evidence presented at trial but not available to the conflicted Committee.

plain how the conflict affected the reasonableness of the interpretation. Whether or not we agree with all of the language in these cases concerning a conflict, that language is no obsta-cle to our reliance on a conflict in determining the scope of admissible evidence in a case that involves *de novo* review.