06-3107-cv
Strom v. Siegel Fenchel & Peddy P.C.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: June 11, 2007)                    Decided: August 15, 2007)

Docket No. 06-3107-cv

KAREN STROM,

*Plaintiff-Appellant*,

− v. −

SIEGEL FENCHEL & PEDDY P.C. PROFIT SHARING PLAN, SIEGEL FENCHEL &
PEDDY, P.C. DEFINED BENEFIT PENSION PLAN, SIEGEL FENCHEL & PEDDY, P.C.
CASH BALANCE PENSION PLAN, SAUL R. FENCHEL, P.A. PLAN, SIEGEL FENCHEL &
PEDDY, P.C., in its capacity as Plan Administrator, WILLIAM D. SIEGEL, in his capacities as
Trustee and fiduciary, SAUL R. FENCHEL, in his capacities as Trustee and fiduciary, TRACIE
P. PEDDY, in her capacities as Trustee and fiduciary and 2 Plan Administrator and SAUL R.
FENCHEL, P.A., in its capacity as Plan Administrator,

*Defendants-Appellees*.

Before:     McLAUGHLIN, CALABRESI and SOTOMAYOR, *Circuit Judges.*

Plaintiff-appellant Karen Strom appeals from a judgment of the United States District
Court for the Eastern District of New York, partially granting defendants' motion for summary
judgment and dismissing Strom's claims under the Employee Retirement Income Security Act
(ERISA), for benefits under pension plans. With respect to Strom's claims under the Profit
Sharing Plan, the district court erroneously deferred to a non-existent decision by the pension
plan administrators; with respect to the Cash Balance Pension Plan, the district court erroneously
held that Strom had waived her claim by failing to exhaust her administrative remedies.
Accordingly, the judgment of the district court is VACATED and REMANDED.

Leslie Corwin (Neil A. Capobianco & Simon Miller, *on the
brief*), Greenberg Traurig, LLP, New York, N.Y., *for
plaintiff-appellant*.

Stephen B. Latham (Philip D. Nykamp, *on the brief*), Twomey, Latham, Shea, Kelley, Dubin & Quartararo LLP, Riverhead, N.Y., *for defendants-appellee*s.

SOTOMAYOR, *Circuit Judge*:

Plaintiff-appellant Karen Strom sued her former law firm, defendant-appellee Siegel Fenchel & Peddy, P.C. ("SFP"), under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, claiming entitlement to benefits under pension plans administered by the firm. Strom now appeals from the September 30, 2005 judgment of the United States District Court for the Eastern District of New York (Orenstein, M.J.), partially granting defendants-appellees' motion for summary judgment on those claims. We vacate and remand that judgment because the plan administrators failed to offer any interpretation of the plans' terms to which the district court might have accorded deference in granting summary judgment to SFP, and because the district court erroneously held that Strom had waived her claim under one of the plans by failing to exhaust her administrative remedies, of which remedies she was never informed by SFP.

## BACKGROUND

Except where noted, the parties do not dispute the facts in this case.

Strom started her career as a secretary at a predecessor firm to SFP in 1980. She began attending law school in 1985, but continued to work at SFP part-time. After passing the New York bar exam in 1988, she joined the firm as an attorney. She was promoted to the position of "partner" at SFP, effective January 1, 1995, and was again promoted, this time to the position of "profit-sharing partner," effective January 1, 1997. Although SFP was technically a professional

corporation, the title of "partner" was given to those, like Strom, who were senior attorneys in the office. At the time of Strom's elevation to "partner" status in 1995, the three individual defendants in this case — William Siegel, Saul Fenchel and Tracie Peddy — were shareholders, and two other attorneys — Michael Schroder and Andrew Cangemi — were "profit-sharing partners" as well as "officers" of the firm. Nothing in the record explains the significance of the "officer" title within the corporate structure of SFP — for example, how it was assigned or what the officers' roles and responsibilities were.

Strom decided to leave SFP in 2000 to form a new firm with fellow SFP alumnus Michael Schroder. She then claimed entitlement to benefits under, *inter alia*, two of SFP's pension plans: the SFP Profit Sharing Plan ("Profit Plan") and the SFP Cash Balance Pension Plan ("Cash Plan") (collectively, the "Plans"). The Plans made pension benefits available to all employees, but reserved an "increased contribution" for a defined subset of employees.[1] This subset changed repeatedly over the duration of Strom's employment at SFP as a result of several amendments to the Plans. Each amendment excluded a different group of employees from the "increased contribution": an amendment purportedly effective January 1, 1995 excluded all "salaried associates"; another purportedly effective January 1, 1996 excluded all "non-profit sharing attorneys"; and a third amendment purportedly effective January 1, 1997 excluded all "non-equity profit-sharing attorneys with 13% or less profit share." Notably, SFP claims that Strom was a member of each of the three excluded groups of employees and candidly admits that

---

[1]     The difference between the two levels of eligibility is substantial. For example, at one point during Strom's employment with SFP, under the Profit Plan, the firm's contributions totaled eighty-four percent of all annual income over $120,000 for participants eligible for the "increased contribution," but only five percent for those, like Strom, who were excluded from it.

the firm amended the language of the Plans expressly "to maintain[] the existing rate of benefit accrual for Strom and to allocate the increased contribution only to the officers and shareholders."

With respect to the 1995 amendment, Strom insists that she could not have been excluded as a "salaried associate" because she was a partner entitled to full benefits — specifically, that she was entitled to the "increased contribution" benefits that Siegel, Fenchel, Peddy, Schroder and Cangemi all received. Strom claims, *inter alia*, that the 1996 and 1997 amendments were invalid as applied to her because they were passed by the firm's leadership without notice to her, and after her benefits had accrued under the Plans' unamended provisions, in contravention of various ERISA provisions. By contrast, the defendants argue that because SFP was a professional corporation and distinguished only between shareholders and non-shareholders, the title "partner" did not affect Strom's status under the Plans. They claim that Strom's eligibility for benefits is governed exclusively by the terms of the Plans, and that she was excluded from the "increased contribution" by each successive Plan amendment, all of which were passed in compliance with the relevant ERISA provisions.

I.    *Strom's 2000 Lawsuit*

In 2000, Strom requested certain documents from SFP relating to its Profit Plan and Cash Plan. In an August 2, 2000 letter, SFP informed Strom that it was in the process of computing her benefits under the Profit Plan and that, "[a]s you know, you are not a participant in the [Cash Plan] as you were neither a shareholder, nor an officer of Siegel Fenchel & Peddy, P.C." The letter did not indicate which provisions of the Cash Plan were being interpreted, or why the fact that Strom was not a shareholder or officer of SFP rendered her ineligible for any benefits under

-4-

the terms of the Cash Plan or its operative amendments.

On August 7, 2000, Strom and Schroder filed an ERISA action in the United States District Court for the Eastern District of New York (Mishler, J.), against SFP, as well as Siegel and Peddy. In that action — which is not before us in the present appeal — Strom claimed entitlement to benefits under both the Profit Plan and the Cash Plan. The district court did not reach the merits, however, but rather dismissed Strom's complaint on December 7, 2000, for failure to exhaust administrative remedies. The district court also rejected Strom's argument that SFP had denied her effective access to the administrative remedies provided under the relevant Plans, but nonetheless granted Strom "the opportunity to file requests for review of [her Profit Plan and Cash Plan claims] on or before December 18, 2000."

By letters dated January 8, 2001, January 17, 2001, and April 25, 2001, Strom submitted to SFP a claim for benefits under both the Profit Plan and the Cash Plan. Even though these letters came after the December 18, 2000 deadline set by the district court, SFP considered the claims on the merits.

*II.*      *The Administrative Proceedings*

In response to the requests for Cash Plan benefits contained in Strom's letters, SFP sent her a letter on April 23, 2001, summarily reiterating its position that Strom was ineligible for any Cash Plan benefits "as she was not a partner or shareholder." Like the August 2, 2000 letter, this letters did not purport to interpret a particular provision of the Cash Plan, nor did it provide further clarification as to why Strom was ineligible to claim benefits.

Strom's January letters to SFP also contained requests for documentation relating to the Profit Plan and the Cash Plan. In its April 23, 2001 letter to Strom, SFP indicated that it had

already provided her with the documents relating to the Profit Plan on January 5, 2001. With respect to her request for documents relating to the Cash Plan, SFP informed Strom that she was "not entitled to the Information requested in [her] letter," because, as SFP had explained to her previously, she was "neither a shareholder [n]or an officer of Siegel Fenchel & Peddy, P.C." However, SFP again did not explain why Strom's ineligibility for benefits under the Cash Plan precluded her even from receiving documents relating to that Plan, from which she or her counsel could determine her eligibility for Cash Plan benefits. Two days later, on April 25, 2001, Strom responded to this letter. Based on a copy of a plan she had obtained from Michael Schroder,[2] her new law partner and a former SFP attorney, Strom explained why she believed she was a participant in the Cash Plan and therefore eligible for benefits thereunder. In response to this letter, on June 12, 2001 SFP wrote to Strom and again summarily explained that she was not eligible to receive Plan documents or benefits, "[a]s she was not a partner or shareholder."

Further, SFP's April 23, 2001 letter to Strom conceded that she was entitled to benefits under the Profit Plan, but denied the amount of benefits Strom requested. The letter purported to explain how SFP had reached its lower benefits calculation, but it did not explain why SFP was using the precise figures that it did; that is, SFP did not offer, expressly or implicitly, an interpretation of the Profit Plan terms. The April 23, 2001 letter also set a deadline of June 25, 2001 for Strom to request an administrative hearing to review the decision. Strom exercised that

---

[2]     Because of the relatively spare record concerning Schroder's copy of the Plan, a number of details remain unclear. First, the effective date of the copy is unclear. In her letter to SFP, Strom's attorney "assume[d] that the copy of the plan document that [Schroder] gave us covered the period of time that Karen Strom was affiliated with your firm." Second, it is unclear whether the copy of the Plan was complete; in particular, we do not know whether Schroder's copy of the Plan included any information concerning participants' rights to appellate review of their claims.

right and requested a hearing by letter dated June 24, 2001. The hearing was conducted on January 22, 2002 before Siegel, Fenchel and Peddy, who serve as the Plan administrators, and the near-exclusive focus was on Strom's claim to benefits under the Profit Plan.

Two days after that hearing, on January 24, 2002, Strom made a formal request for a hearing with respect to her Cash Plan claim. She claims that she waited until this date to do so because she only learned that she was required to make a formal request for such a hearing at the January 22, 2002 hearing on her Profit Plan claim. While it is unclear what in particular spurred Strom's formal request, Strom appears to argue that because SFP persistently denied her status as a participant in the Cash Plan and refused to apprise her of any of her rights thereunder, she was uncertain whether SFP would even have entertained a formal request for a hearing under that Plan. Strom claims that it was only at the January 22 hearing that she learned that one of SFP's defenses against her Cash Plan claims was that she had not made a request for a hearing to review them.

On March 12, 2002, SFP issued a "Decision After Hearing" (the "Decision"), memorializing the January 22, 2002 hearing. The Decision explained that the January 22, 2002 hearing was meant to review Strom's Profit Plan claim, and that "Strom's claim reduced itself to two aspects: (1) that the benefits to which she was entitled were not properly calculated in respect to certain plan years; and (2) that she was entitled to greater contributions on the grounds that she was a 'partner' in a number of the Plan years." The Decision then proceeded to explain why it could not conclusively resolve her claims:

> The "hearing" consisted essentially of a colloquy among Ms. Strom, her counsel and the presiding Hearing Officer. Apart from the question of the mathematical computations, the question was, and still is, on what basis does Ms. Strom claim that she is entitled to

additional contributions in the Siegel Fenchel & Peddy [Profit Plan]?

Ms. Strom's counsel indicated that the basis for Ms. Strom's claim for additional contribution in the [Profit Plan] was that she was a "partner."

However, there is no definition of the term "partner" in the [Profit Plan] . . . . Assuming that the term "partner" would, in some way, qualify Ms. Strom for additional contribution, it was requested of Ms. Strom and/or her counsel that documentation be provided to establish (i) the position of "partner"; (ii) the significance of that position inside the SPF firm; and (iii) the significance as it relates to the Plan.

No documentation was provided other than an announcement stating that Ms. Strom was a "partner" and a letter referring to Ms. Strom as "partner." This appeared to be the sum total of Ms. Strom's evidence in support of her position as a "partner." However, no information, documentation or any evidence was proffered to establish the significance of this term. It was unclear whether Ms. Strom's position was that "partner" was equivalent to owner of the firm or was equivalent to some position which would be recognized by the pension plan as qualifying her for additional contribution. Indeed, upon being questioned as to the absence of any substantial documentation to establish any of these propositions, Ms. Strom's counsel indicated that the material was "deliberately" withheld since Ms. Strom was involved in [other] litigation . . . against the SFP firm . . . .

In any event, no explanation was offered by Ms. Strom or her counsel as to exactly how Ms. Strom qualified for additional contribution under the Plan terms or the significance of the term "partner" as it relates to this Plan. Whatever the position of the Claimant, it certainly was not made evident at the hearing, nor was any information provided at the hearing; in fact, it was indicated that it had been deliberately withheld.

The Decision made clear that it was only tentatively denying Strom's Profit Plan claim:

As noted, the exhaustion of administrative remedies is an absolute prerequisite. By the same token, the administrative remedy must be pursued "in good faith" by the Claimant. Appearing at a hearing without making a reasonable effort to present the evidence in support of the position is not proper use of the administrative remedy, nor does it constitute an exhaustion of the administrative remedy . . . .

Under the circumstances, since the administrators, at the hearing, were denied a submission by Claimant of all the relevant factors to make a full and genuine evaluation of her claim, it would be impossible and inappropriate for the administrators to reach a final determination on Ms. Strom's claim. Rather, the hearing should be adjourned to a date for Ms. Strom and her representative to provide the necessary information in support of her claim so that the administrators can render a determination. If Ms. Strom, having presented all the evidence in support of her position, is dissatisfied with the

determination, she can then properly seek her remedy in court.

The Decision turned briefly to the Cash Plan claim, and noted (1) that a letter rejecting Strom's Cash Plan claim had been sent on June 12, 2001; (2) that the denial in that letter "was plain, leaving no doubt that Claimant's counsel, an expert in ERISA law, had she disagreed with the conclusion, should have exercised her right to a hearing"; and (3) that Strom raised no questions about the Cash Plan prior to December 18, 2000. The Decision concluded that, while the Cash Plan itself requires that a claimant request a hearing within sixty days of an adverse decision, Strom did not make any such request following the June 12, 2001 letter. Moreover, the Decision noted that, in any event, Judge Mishler had ordered Strom to exercise her right to administrative review before December 18, 2000, and "it is beyond dispute that no such request was made prior" to that date. Thus, the Decision concluded, since "[n]o request for a hearing [had] been made either under the Plan period or the period set by the [district court], Ms. Strom has intentionally waived her administrative remedy to review the denial under the [Cash Plan]."

Another hearing on Strom's Profit Plan claim was held on May 14, 2002, but no decision was issued after those proceedings.

III.     *The Present Lawsuit*

On March 18, 2003, Strom filed the complaint that forms the basis for this appeal. In this complaint, Strom sought a declaration of her rights under four of SFP's pension plans (including the Cash Plan and the Profit Plan), as well as an award of additional benefits under each. She also added a separate claim asserting breach of fiduciary duty by the Plans' administrators. Defendants-appellees, in their answer to Strom's complaint, asserted ten affirmative defenses, including that Strom's "claims may be barred, in whole or in part, by the doctrine of laches,

waiver and/or estoppel, or by the applicable statute of limitations."

By consent of the parties, the case was referred to United States Magistrate Judge James Orenstein. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. Both sides moved for summary judgment, and after reviewing the parties' submissions, the district court held, *inter alia*, (1) that Strom's claim that she was a "partner" and therefore entitled to an increased contribution was "foreclosed by an administrative decision that was neither arbitrary nor capricious"; and (2) that Strom "has waived her claim" under the Cash Plan because she failed to exhaust her administrative remedies.[3]

As the district court noted, Strom raised a "standard of review" argument against the March 12, 2002 Decision, which had denied her claim that, as a "partner" of the firm, she was entitled to the same benefits as Siegel, Fenchel, Peddy, Schroder and Cangemi. Specifically, Strom argued that the district court must interpret the relevant Plan terms — "salaried associate" and "non-profit sharing attorney" — *de novo*, on the grounds that the administrators

> "interpreted" the plans under a flagrant and inherent conflict of interest, refused even to accept Strom's participant status in 3 of the 4 plans until after Strom commenced the instant litigation, offered varying and conflicting plan "interpretations" designed solely to deprive Strom of her rightful benefits, and did not apply the "interpretation" it now urges on the other non-shareholder partners[, i.e., Schroder and Cangemi,] of SFP.

The district court rejected Strom's argument that a *de novo* standard of review applied. The court first explained that parties had conceded that the Profit Plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), and that, accordingly, the administrators' decision was subject to review for abuse of discretion.

---

[3]     The district court's other holdings are not before us on appeal.

-10-

Regarding Strom's claim that the administrators reviewed her claims under a conflict of interest, the district court observed that such a conflict did not alter the standard of review, but rather that the "conflict must be weighed as a factor in determining whether there is an abuse of discretion." *Id.* (internal quotation marks and alteration omitted). The district court further noted that Strom's reliance on *DeFelice v. American Internationall Life Assurance Company of New York*, 112 F.3d 61 (2d Cir. 1997), was misplaced, because *DeFelice* involved a plan in which the plan administrators were *not* given discretion to interpret ambiguous terms in the plan language.[4] *See id.* at 65-66.

Thus, the district court reviewed the March 12, 2002 Decision to determine whether it was arbitrary and capricious. On the question of whether the Decision passed this standard, the district court said only the following:

> Under [the arbitrary and capricious] standard of review, I must defer to the administrators' decision to interpret the terms "salaried associate" and "non-profit sharing attorney" to mean attorneys who were neither shareholders nor officers of SFP because that interpretation was not "without reason, unsupported by substantial evidence or erroneous as a matter of law."

As to Strom's Cash Plan claim, the district court explained that defendants-appellees were arguing, *inter alia*, (1) that the denial of Strom's Cash Plan claim occurred no later than August 2, 2000, when Strom received the first letter stating that she was "not a participant in the [Cash Plan] as [she was] neither a shareholder nor an officer of Siegel Fenchel & Peddy, P.C."; and (2) that Strom waived her Cash Plan claim because, following the August 2, 2000 denial, Strom failed to seek review either before the Plan's sixty-day deadline or even before the later

_____

[4] *DeFelice* dealt with the unrelated question of whether, when a plan is being reviewed *de novo*, a reviewing court may consider evidence outside the administrative record when the plan administrator was operating under a conflict of interest. *DeFelice*, 112 F.3d at 65.

deadline of December 18, 2000 specified in Judge Mishler's order dismissing Strom's first ERISA action.

The district court then asserted that Strom failed to offer any meaningful response to defendants-appellees' contentions, and that her "entire response to defendants['] argument is contained in a footnote in her opposition brief," which stated:

> While Strom attempted to appeal in 2001 and 2002 under both the [Profit Plan] and the [Cash Plan], Defendants absolutely refused to provide necessary [Cash Plan] documents. Defendants also refused to provide certain requested [Profit Plan] documents and did not grant or deny Strom's [Profit Plan] appeal. While Defendants initially moved to dismiss Strom's claims for failure to exhaust administrative remedies, that motion has been withdrawn.

Given this, the district court noted that "[i]t thus appears that Strom concedes that she did not request an administrative hearing before the deadlines that the defendants cite, and that implicit concession is consistent with the record." Nonetheless, the district court decided it would be prudent to investigate her claim more thoroughly. In so doing, the district court found that it did not need to determine whether the appropriate deadline for Strom to request a hearing was Judge Mishler's December 18, 2000 deadline or sixty days following the August 2, 2000 letter. This was because SFP *also* sent a letter to Strom on June 12, 2001, which again denied her Cash Plan claim. And, three days later, Strom's lawyer responded to SFP with a letter formally requesting "a hearing on the denial of [her] claim for benefits from the [*Profit* Plan]," but said nothing about a hearing on her claim under the Cash Plan. It was not until January 24, 2002 — two days after the hearing regarding the Profit Plan — that Strom finally requested a hearing for her Cash Plan claim. And this date, the district court concluded, was well past the sixty-day deadline, even assuming that the June 12, 2001 letter commenced the sixty-day time period.

The district court then acknowledged and, in turn, rejected Strom's argument that "the written denial of her claim for Cash Plan benefits set forth in the letter of June 12, 2001, was not sufficient under [the terms] of the plan" to provide her with notice of her right of review, or the procedures governing such an appeal. Observing that the June 12, 2001 letter "contained all of the required information, including the deadline for appeal, though it pertains to the [Profit Plan]," the district court reasoned that Strom was implicitly provided with sufficient information concerning the requirements governing administrative review under the Cash Plan. Thus, the district court found that it was "difficult to believe this technicality"— the letter's inclusion of information concerning the Profit Plan, but not the Cash Plan —"prevented Strom from requesting a hearing to review the administrators' denial" of her rights under the Cash Plan.

Because the district court concluded that Strom had "waived" her Cash Plan claim, it did not consider defendants-appellees' alternative argument that the administrators' denial of benefits under the Cash Plan must be sustained under the arbitrary and capricious standard of review.

**DISCUSSION**

On appeal, Strom argues that the district court erred in holding (1) that the arbitrary and capricious standard of review applied to the Plan administrators' Decision denying Strom's claim for enhanced benefits under the Profit Plan, and that the Plan administrators' Decision rejecting Strom's Profit Plan claim was neither arbitrary nor capricious; and (2) that Strom waived her Cash Plan claim.

I.      *The Profit Plan Claim*

Strom raises two arguments why the district court should have applied a *de novo* standard

-13-

of review to her claim under the Profit Plan. First, relying on this Court's decision in *Nichols v. Prudential Insurance Co.*, 406 F.3d 98 (2d Cir. 2005), she contends that the Plan administrators never issued a final decision on its review of her Profit Plan claim, and therefore that this claim should be deemed denied by operation of law. *See id.* at 106 ("strongly suggest[ing]" that a plan administrator's failure to comply with certain plan regulations "renders the claimant's administrative remedies exhausted by operation of law and consequently permits the claimant to seek review in the federal courts without further delay"). A claim deemed denied by operation of law, Strom claims, must be reviewed by the court *de novo* because the claim denial does not represent any exercise of discretion by plan administrators. *Id.* at 109. Second, she contends that the Plan administrators operated under a conflict of interest necessitating *de novo* review by the district court.

We hold that the district court erred, and should have reviewed the administrators' decision *de novo*. The district court stated that it was compelled to "defer to the administrators' decision to interpret the terms 'salaried associate' and 'non-profit sharing associate' to mean attorneys who were neither shareholders nor officers of SFP," but the district court could not defer to an interpretation that the Decision never in fact made or explained. The Plan administrators specifically reserved decision on Strom's claims, observing that in light of her alleged refusal to cooperate during the hearing, "it would be impossible and inappropriate for the administrators to reach a final determination on Ms. Strom's claim." We express no opinion concerning SFP's claim that Strom refused to cooperate, but rather observe that the text of the Decision itself makes clear that no actual decision was made.

In *Nichols*, after Prudential failed to timely issue a final decision on Nichols' appeal from

-14-

a denial of benefits, she went directly to federal court and sued her insurer under ERISA. We held that her claim was "deemed denied" by Prudential's inaction and that her administrative remedies were exhausted by operation of law. *Id.* at 104, 109. Based on the Supreme Court's decision in *Firestone Tire & Rubber Co.*, we observed that "we may give deferential review only to actual exercises of discretion," and that "[a] 'deemed denied' claim is not denied by any exercise of discretion, but by operation of law." *Id.* at 109. We instructed the district court to review the plan administrator's decision *de novo* because Prudential's inaction "le[ft] the court without any decision or application of expertise to which to defer." *Id.* In the instant case, the Plan administrators explicitly refused to decide Strom's claim, and such a non-decision cannot be deemed an "exercise of discretion" to which the district court might have deferred.[5]

Because a non-existent interpretation cannot be a reasonable one, the district court erred in deferring to the Profit Plan administrators' Decision. Nor could the district court properly rely on the letters that SFP sent to Strom. None of those letters offers an *interpretation* of the Profit Plan's language. Though SFP's letters about the *Cash Plan* did state that Strom was not eligible for any Cash Plan benefits because she was neither a shareholder nor an officer — and its June 12, 2001 letter further asserted that Strom was not a "partner," *see supra* — even those statements did not offer any explanation of why this was so, much less one that could be imputed to the terms of the *Profit Plan*.[6]

---

[5] SFP's argument that the Plan administrators did not issue a final decision because Strom failed to comply with requests for certain documents does not change the fact that the Plan administrators never issued a final decision on Strom's claims, explaining why, under the terms of the Plan, she was ineligible for the benefits she claimed.

[6] We express no opinion as to the construction of the terms "salaried associate," "non-profit sharing attorneys," or "non-equity profit-sharing attorneys," their application to

For these reasons, we vacate the district court's grant of summary judgment dismissing Strom's Profit Plan claim and remand the claim to the district court for further proceedings.

## II.     The Cash Plan Claim

The parties concede that SFP's letters to Strom did not comply with the notice requirements of ERISA, which mandate that covered employee benefit plans "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant," 29 U.S.C. § 1133(1), and "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review," *id.*

---

Strom, or the effect of the amendments on her eligibility under the Profit Plan or Cash Plan. We do note, however, that contrary to the assertion of the district court, the Decision rendered by the Plan administrators did not contain any analysis of the terms "salaried associate" or "non-profit-sharing partner," which go undefined in the Profit Plan. Nor did the Plan administrators point to any other contextual language in the Plan which might require, or even suggest, the interpretation of these terms that the administrators essentially urged. Furthermore, the Plan administrators did not adduce any evidence to show that their purported interpretations of "salaried associate" and "profit-sharing partner" were consonant with common usage or practice in the legal marketplace. That is, the Plan administrators wholly failed to marshal any support for their own construction of these terms.

In construing the Plan *de novo*, the district court on remand must first look to its terms, and "unambiguous language in an ERISA plan must be interpreted and enforced in accordance with its plain meaning. 'Language is ambiguous when it is capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" *Aramony v. United Way Replacement Benefit Plan*, 191 F.3d 140, 149 (2d Cir. 1999) (quoting *O'Neil v. Ret. Plan for Salaried Employees of RKO Gen., Inc.*, 37 F.3d 55, 59 (2d Cir. 1994)) (internal citations omitted). Whether ERISA plan language "is ambiguous is a question of law that is resolved by reference to the contract alone." *O'Neil*, 37 F.3d at 59 (internal quotation marks and citation omitted). Defendants-appellees have thus far provided no persuasive explanation why the terms "salaried associate" and "profit-sharing partner" are ambiguous or should mean anything other than what they clearly denote.

Further, we express no opinion as to whether the amendments were passed in compliance with the relevant ERISA provisions, an issue the district court never addressed.

§ 1133(2).[7]   Additionally, ERISA regulations elaborated at 29 C.F.R. § 2560.503-1(g)(1) require that notice to the claimant of an adverse benefit determination "shall set forth, in a manner calculated to be understood by the claimant . . . [a] description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action."  Thus, Strom argues on appeal that the district court erred in determining that she had waived her claim because she failed to exhaust her administrative remedies.  In response, defendants-appellees argue that a failure to comply with the notice requirements of § 1133 will not save a plaintiff who had actual knowledge of her right to seek review.

The district court conflated its finding that Strom waived her claims under the Cash Plan with its finding that she failed to exhaust her administrative remedies and was therefore precluded from bringing an action in federal court.  Because there is no suggestion that Strom forewent her Cash Plan claims "knowingly and voluntarily," *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1367 (2d Cir. 1991), as would be required for her to waive those claims, we must vacate the district court's finding of waiver.  Simply put,

---

[7]     To the extent that SFP argues that Strom did have notice of the Cash Plan's review provisions, we observe that such an argument rests on two very thin reeds, neither of which withstands scrutiny.  First, SFP relies on the alleged similarity between the copy of the Cash Plan that Strom obtained from Schroder and the Profit Plan, the provisions of which Strom knew.  From this alleged similarity, the SFP appears to argue that Strom was given constructive notice of the appeals provisions of the Cash Plan.  But absent a showing that Strom knew the Plans to be identical, SFP cannot show that Strom had knowledge of the Cash Plan's review procedures merely because she was aware of the procedures contained in the Profit Plan.  Second, SFP suggests that Strom's mere possession of Schroder's copy of the Cash Plan gave her sufficient notice of its appeals provisions.  But, again, absent any showing that Schroder's copy of the Cash Plan was true and complete, and that Strom knew the Plan to be operative during the time period when her claims arose, a court could not find actual knowledge on Strom's part.

To the extent the district court relied on these arguments in finding that Strom received adequate notice of her rights to administrative review under the Cash Plan, we reject that finding.

Strom cannot have waived her rights to administrative review procedures of which she was not given notice by SFP. SFP represented to Strom that she was ineligible to receive any information concerning her eligibility under the Cash Plan. We do not opine on the legitimacy of SFP's repeated assertion that Strom was not in fact a participant under the Plan; we leave this question to the district court for resolution. But we find nothing in the record to support SFP's assertion that Strom, as a putative non-participant in the Cash Plan, could not have access to Plan documents, on the basis of which she might have made an argument for her participation under the Plan or, more specifically, sought administrative review of SFP's ostensible determination that she was a non-participant. SFP's repeated refusal to provide Strom with the requested documents because in its view she was a non-participant in the Plan clearly ran afoul of ERISA's notice provisions, which require that adverse benefit determinations be "calculated to be understood by the claimant" and contain notice of the claimant's rights to administrative review. 29 C.F.R. § 2560.503-1(g)(1). Thus, Strom cannot be held to have waived any rights of which she was never apprised.

In a case such as this one, where the plan administrator has denied a claimant's very status as a plan participant and consequently refused to produce plan-related documents — which the claimant had specifically and repeatedly requested — we hold that, as a matter of law, the plan cannot make the requisite showings concerning the knowing or voluntary nature of the claimant's alleged waiver of his or her rights to administrative review. Accordingly, the "actual knowledge" exception articulated by this Court in *Veltri v. Building Services 32B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004), is not implicated here. In *Veltri*, we held that, for purposes of the statute of limitations, a claimant will be held to her actual knowledge, regardless

of the plan administrator's failure to provide adequate § 1133 notice. We opined that, where a plan administrator fails to give adequate § 1133 notice of a right to appeal to a court, it may be appropriate to equitably toll the statute of limitations, but that such an extraordinary remedy would not be appropriate when the claimant already knew she had a right to appeal to a court. *See id.* ("[A] plaintiff who has actual knowledge of the right to bring a judicial action challenging the denial of her benefits may not rely on equitable tolling notwithstanding inadequate notice from her pension plan.").

This Court has not yet ruled whether the "actual knowledge" holding of *Veltri* applies to pension plan review procedures, *cf. Garcia Ramos v. 1199 Health Care Employees Pension Fund*, 413 F.3d 234, 238 (2d Cir. 2005) (observing that this Court "ha[s] never squarely held that [equitable tolling] applies to time limits that are specified in [ERISA] plan provisions" (alterations in original; internal quotation marks omitted)), and we need not do so here because our holding forecloses a waiver defense in the circumscribed circumstances present in this case. When a plan assiduously refuses to provide a claimant with information concerning her eligibility or administrative review rights under the plan, any alleged waiver simply cannot be knowing or voluntary.

To the extent that the district court's holding with respect to the Cash Plan turns on Strom's alleged failure to exhaust, the district court erred because "[d]efendants who give inadequate notice of the right to administratively appeal a denial of benefits are thus precluded . . . from asserting failure to exhaust administrative remedies as a defense." *Veltri*, 393 F.3d at 324 (citing *Burke v. Kodak Ret. Income Plan*, 336 F.3d 103, 108 (2d Cir. 2003)).

In conclusion, we find the district court's waiver determination to be untenable in light of

SFP's non-compliance with the notice provisions of ERISA, and we find SFP to be precluded from raising a failure-to-exhaust defense. We therefore vacate the district court's holding with respect to Strom's Cash Plan claims and remand for further proceedings consistent with this decision.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is VACATED, and the case is REMANDED for further proceedings.